**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**DAVID JUDD,**

       **Plaintiff,**

                                         **Civil Action 2:09-cv-0283**
**vs.**                                     **Judge Gregory L. Frost**
                                         **Magistrate Judge E.A. Preston Deavers**


**COMMISSIONER OF SOCIAL**
**SECURITY,**

       **Defendant.**


**REPORT AND RECOMMENDATION**

Plaintiff, David Judd, filed this action seeking review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his application for supplemental

security income.  Plaintiff originally filed for supplemental security income on May 2, 1995,

claiming disability since January 1, 1994.  On September 18, 1998, Administrative Law Judge

("ALJ") James I.K. Knapp found that Plaintiff was not disabled.  ALJ Knapp's decision became

the final decision of the Commissioner when the Appeals Council denied review.  Plaintiff filed

for supplemental security income a second time on July 26, 2000.  The Department of Health

and Human Services ("DHHS") denied Plaintiff's application on January 9, 2001.  On October

25, 2001, Plaintiff applied once again for supplemental security income.  DHHS denied this

application initially on May 8, 2002 and after reconsideration on February 10, 2003.  Plaintiff

took no further appeal from this denial.

Plaintiff filed his current claim for supplemental security income on November 22, 2004.[1]

After initial denials of his claim, Plaintiff appeared and testified before ALJ Thomas R.

McNichols on December 4, 2007.  In a decision dated March 28, 2008, ALJ McNichols found

that Plaintiff was not disabled before March, 9, 2008, but became disabled on that date.  That

decision became the final decision of the Commissioner when the Appeals Council denied

review on February 9, 2009.

Plaintiff thereafter commenced this civil action.  The record of administrative

proceedings was filed on June 17, 2009.[2]  Plaintiff filed a statement of specific errors on April

14, 2010.  This matter is now ripe for review.

## II. Plaintiff's Testimony

Plaintiff, who was fifty-four years old at the time of the December 2007 hearing and

fifty-five years old at the time of the ALJ's March 2008 decision, has an eleventh grade

education.  Plaintiff last worked in 1988, when he treated telephone poles.  (R. at 376.)

Plaintiff testified that he has been unable to work since 1988 due to Lupus.  (*Id.*)

---

[1] In the November 22, 2004 application Plaintiff again asserted that he had been disabled since January 1, 1994.  (R. at 65.)  The ALJ concluded that the previous decisions were final and binding.  (R. at 19.)  The ALJ, therefore, treated the application as alleging disability beginning November 22, 2004.

[2] Initially, the parties were apparently confused about the extent of the record in this case. During the December 4, 2007 administrative hearing, the ALJ admitted Exhibits "1 through B-37F." (R. at 373.)  The original administrative transcript, filed with the Court on June 17, 2009, contained Exhibits B-1A through B-37F.  (R. at 1–4.)  On September 17, 2009, Plaintiff filed a motion for extension indicating that portions of the record, starting at Exhibit 1A, were missing from the administrative transcript.  (Doc. 17 at 2.)  On March 15, 2010 the Defendant filed a supplemental administrative transcript with the Court, which the Social Security Administration certified.  (R. at 409–786.)  The supplemental transcript does not provide exhibit labels for its records.  Neither party has objected to the state of the record since the supplemental transcript was filed.  Accordingly, the undersigned assumes that the entire supplemental transcript was before the ALJ at the time of his March 28, 2008 decision.

Plaintiff testified that his Lupus has become worse through the years.  (*Id.*)  Plaintiff suffers from

pain in his lower back and legs, and has had surgery on the Achilles tendon in his left leg.  (R. at

377.)  Because Plaintiff required steroids for his left leg, his tendon did not heal properly.  (*Id.*)

According to Plaintiff, he wears a brace on his left leg, has used a cane for approximately seven

years, and occasionally uses a walker.  (R. at 378, 383, 391.)  Plaintiff takes Coumadin to

prevent blood clots.  (R. at 378.)  Plaintiff also noted that he has a history of shortness of breath,

heart problems, and vision problems.  (R. at 379–80.)

　　In addition to his legs and back, Plaintiff also testified to pain in his elbows, knees, and

jaw.  (R. at 384.)  On a scale from one to ten, Plaintiff stated that his pain was over ten.  (R. at

385.)  Plaintiff has received steroid injections for the pain, but, according to his testimony, the

injections have provided no relief.  (*Id.*)  He also stated that he commonly goes to the emergency

room because his pain is so severe.  (*Id.*)

　　Plaintiff testified that he could stand for about ten minutes, sit for about thirty minutes,

and lift about ten pounds.  (R. at 388.)  According to Plaintiff, he cannot climb steps.  (*Id.*)

Plaintiff does not cook, wash dishes, or do other household chores.  (R. at 391, 394.)  Plaintiff

smokes about half a pack of cigarettes a day.  (R. at 393.)  Plaintiff spends his typical day laying

down and watching television.  (R. at 394.)

### III.  The Medical Records

　　Plaintiff was diagnosed with Lupus in 1988.  (R. at 267.)  From 1998 through 2004,

Plaintiff received treatment for Lupus from Mad River Internal Medicine.  (R. at 210–68.)

During this time period, Dr. Laura Murray frequently examined Plaintiff.  (*Id.*)  During the

course of Plaintiff's treatment, Dr. Murray noted that Plaintiff had some trouble with his gait and

frequently complained of falling, although at other times Dr. Murray described Plaintiff's gait as

"strong and steady." (*See, e.g.*, R. at 234, 262.)  In addition to Lupus, Dr. Murray's treatment notes also mention recurrent deep vein thrombosis ("DVT"), fibromyalgia, and headaches.  (R. at 250–68.)

Dr. Thomas C. Franklin, an orthopedist, saw Plaintiff on referral from Dr. Murray in August 1999 and for a follow up in November 1999.  (R. at 740–48.)  Dr. Franklin ordered an MRI of Plaintiff's left knee, which demonstrated small joint effusion; linear signal within the posterior horns of the medial and lateral meniscus, which was likely degenerative; and small osteophytes arising from the femoral condyles.  (R. at 741.)  On September 8, 1999, Dr. Franklin, in a letter to Hardin County Child Support Enforcement Agency, stated that Plaintiff was unable to work due to a recurrent knee problem.  (R. at 744.)  The letter also noted that "[e]stimated time off work will be three months pending the need for surgical treatment." (*Id.*) Dr. Franklin wrote a similar letter on March 7, 2000, stating that Plaintiff "has significant orthopedic problems with his lower extremities.  These include significant injury to his knee with ligamentous injury."  (R. at 748.)  Dr. Franklin concluded, "[i]n my opinion, due to the combination of all of these impairments [Plaintiff] is permanently unable to return to work." (*Id.*)

In April 2000, Dr. Murray referred Plaintiff to Dr. Mujeeb A. Ranginwala.  After a physical examination of the patient and laboratory testing, Dr. Ranginwala concluded that Plaintiff's lupus was "under good control," but that Plaintiff did have "myofascial pain syndrome which may be causing generalized fatigue and myalgias."  (R. at 749.)

Dr. Murray filled out a Bureau of Disability Determination questionnaire on August 15, 2000.  (R. at 730–38.)  On the questionnaire Dr. Murray indicated that Plaintiff was "[p]rimarily limited by pain."  (R. at 731.)  Dr. Murray reported that Plaintiff's symptoms affected his legs,

hips, knee, back, shoulders, elbow, and jaw.  (R. at 730.)  In responding to the questionnaire, Dr. Murray noted that Plaintiff's pain often interferes with his personal grooming.  (R. at 736–37.)  Dr. Murray listed several diagnoses including Lupus, chronic fatigue, fibromyalgia, intermittent depression, and restless leg syndrome.  (R. at 738.)  Ultimately, Dr. Murray concluded "I do not believe [Plaintiff] is capable of maintaining employment at this time or in [the] future due to [the diagnoses] listed above."  (R. at 738.)

Dr. Peter Hoy completed a medical evaluation sheet for Union County's Department of Human Services in August 2000.  (R. at 752–53.)  Dr. Hoy indicated that Plaintiff had calf atrophy, poor ankle movement, and a limping gait.  (R. at 753.)  Dr. Hoy concluded that Plaintiff was unable to perform work requiring walking, running, or frequently lifting more than five pounds.  (*Id.*)

In October 2000, Dr. Robert E. Frank examined Plaintiff for the Bureau of Disability Determination.  (R. at 754–56.)  Dr. Frank found that there was no objective evidence of ongoing arthritis or synovitis, but that there was degenerative arthritis in both of Plaintiff's knees as well as his left hip.  (R. at 755.)  Dr. Frank stated that the most significant finding was "the deformity of the left Achilles with very limited movement in the left foot."  (R. at 756.)  He also noted that Plaintiff required a quad cane to walk.  (*Id.*)

Dr. Vasilos Dross assessed Plaintiff's residual functional capacity on November 27, 2000.  Dr. Dross concluded that Plaintiff could lift twenty pounds occasionally and ten pounds frequently.  (R. at 452.)  Additionally, Dr. Dross concluded that Plaintiff could walk two hours, stand four hours, and sit six hours in an eight-hour work day.  (*Id.*)  Dr. Dross opined that Plaintiff could occasionally climb, balance, stoop, or kneel, but should never crouch or crawl.  (*Id.*)

5

On January 9, 2002, Dr. Dorsey L. Gilliam evaluated Plaintiff for the Bureau of Disability Determination.  (R. at 770–72.) Plaintiff underwent a physical examination, chest x-rays, and a pulmonary-functions test.  Dr. Gilliam concluded that Plaintiff was capable of sitting and standing at will, as well as lifting and carrying three to eight pounds occasionally.  (R. at 772.)

In December 2002, Dr. Murray referred Plaintiff to Dr. Jeffrey E. Goodwin.  Dr. Goodwin performed a physical examination of Plaintiff and ordered a CAT scan.  (R. at 162.) Dr. Goodwin determined that Plaintiff was a heavy smoker and the CAT scan showed a small nodule in Plaintiff's right lung.  (*Id.*)  Dr. Goodwin instructed Plaintiff to receive CAT scans every three months for a two year period.  (*Id.*)  Plaintiff was non-compliant with Dr. Goodwin's three month instruction.  In 2004, however, he received another CAT scan from which Dr. Goodwin concluded that the nodule in the right lung was unchanged.  (R. at 204.)

Dr. Augusto Pangalangan evaluated Plaintiff's physical residual functional capacity in December 2004.  Dr.  Pangalangan determined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently.  (R. at 270.)  He also concluded that Plaintiff could stand, walk, or sit approximately six hours in an eight-hour workday.  (*Id.*)  Dr. Walter Holbrook reviewed and confirmed Dr. Pangalangan's conclusions.  (R. at 276.)

In January 2006, Angela Rutan, a nurse practitioner at Mad River Internal Medicine wrote a letter describing Plaintiff as "permanently disabled due to multiple health problems." (R. at 278.)  In July 2007, Plaintiff went to the emergency room of the Ohio State University Medical Center complaining of chest pain and shortness of breath.  (R. at 307.)  He was diagnosed with a spontaneous pnuemothorax.  (R. at 305.)  The Medical Center discharged Plaintiff on July 30, 2007, with instructions to do no lifting (over ten pounds), pushing, or

6

pulling for two weeks.  (R. at 307.)

## IV.  Expert Testimony

Suman Srinivasan testified as a vocational expert at the December 2007 hearing.  Ms. Srivnivasan testified that Plaintiff had not engaged in substantially gainful activity since 1988. (R. at 400.)  The ALJ then asked Ms. Srinivasan to consider a person in the light work range with various limitations including limits in climbing, stooping, pushing, pulling, crouching, and crawling.  (R. at 401.)  Ms. Srivnivasan concluded that such a person could perform 50,000 jobs at the light unskilled level and 10,000 jobs at the sedentary unskilled level in the Southwest Ohio region.  (R. at 401–02.)  The ALJ then added multiple limitation to the hypothetical profile including limits to interpersonal communication, standing, walking, and repetitive foot use.  (R. at 402–03.)  Based on this profile, Ms. Srivnivasan concluded that such a person could perform 8,000 light unskilled jobs and 5,000 sedentary unskilled jobs.  (R. at 403.)  She provided examples jobs such as parking lot cashier and garment sorter.  (*Id.*)

## V.  The Administrative Decision

In the March 2008 administrative decision, the ALJ determined that Plaintiff had not performed substantially gainful activity since November 22, 2004, the alleged onset date.  (R. at 23.)  Additionally, the ALJ found that Plaintiff suffered from the severe impairments of systemic Lupus erythematosus, chronic left leg pain with history of Achilles tendon repair and deep vein thrombosis, emphysema, history of peripheral neuropathy, and depression.  (*Id.*)  Next, the ALJ concluded that Plaintiff's impairments did not meet an listing impairments under the applicable regulations.  (R. at 26–27.)

The ALJ then determined Plaintiff's residual functional capacity:

After careful consideration of the entire record, the undersigned finds that the

7

> claimant has the residual functional capacity to perform work activities at the
> light exertional level, subject to the following limitations: standing and/or
> walking for no more than one hour at a time, up to a total of four hours during an
> eight-hour workday; no climbing; no repetitive stooping, crouching, crawling, or
> use of foot controls; pushing and pulling limited to no more than 20 pounds; no
> work on uneven surfaces; no exposure to hazards, such as machinery or
> unprotected heights; no exposure to respiratory irritants; no direct dealing with
> the general public; and not required to maintain concentration on a single task for
> longer than 15 minutes at a time.

(R. at 28.)  The ALJ based his finding of a light work exertional level on the opinions of Drs.

Pangalangan and Holbrook.  (*Id.*)  Furthermore, the ALJ explicitly rejected Ms. Rutan's

disability opinion and found that Plaintiff's statements concerning the intensity of his pain were

not entirely credible.  (R. at 28–32.)

Based on his factual findings regarding Plaintiff's impairments and functional capacity,

the ALJ determined that Plaintiff was able to perform a significant number of jobs until March 9,

2008.  (R. at 31.)  On March 9, 2008, Plaintiff reached advanced age, turning fifty-five, and was

no longer able to perform a significant number of jobs in the national economy under the

Medical Vocational Guidelines ("Grids").  (R. at 32.)  Accordingly, the ALJ concluded that

Plaintiff was not disabled prior to March 9, 2008, but became disabled on that date.  (*Id.*).

## VI.  Standard of Review

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the Commissioner's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VII. Legal Analysis

In his Statement of Errors, Plaintiff raises two basic issues.  First, he contends that the ALJ failed to provide good reasons for rejecting the opinions of Plaintiff's treating physicians.  Second, Plaintiff maintains that the ALJ failed to consider various examiners who found limitations consistent with a sedentary work classification.  Plaintiff asserts that if the ALJ had found that he was within the sedentary classification, he would be disabled under the Grids.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.09 (requiring a finding of "disabled" for a person closely approaching advanced age, with limited education, and unskilled or no previous

work experience).

A.  The Treating Physician and Reason-Giving Requirement

Plaintiff's first contention of error is that the ALJ failed to provide good reasons for

rejecting the opinions of Drs. Murray and Franklin regarding Plaintiff's ability to work.  (Pl.'s

Statement of Errors 11–14.)  Defendant maintains that the treating-physician requirements do not

apply to these opinions.  (Def.'s Mem. in Opp'n 8–10.)

The ALJ must consider all medical opinions that it receives in evaluating a claimant's

case.  20 C.F.R. § 416.927(d).  The applicable regulations define medical opinions as

"statements from physicians . . . that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are

likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2);

*Blakley*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling

weight."  20 C.F.R. § 404.1527(d)(2).

Not all physicians are considered treating sources for the purposes of the treating

physician rule.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

Specifically, to qualify as a treating source, a physician must have "examined the claimant . . .

[and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted

10

medical practice." *Id.* (quoting 20 C.F.R. § 404.1502); *see also* 20 C.F.R. § 416.902. A Court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 Fed. Appx. 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion*."); *Cf. Yamin v. Comm'r of Soc. Sec.*, 67 Fed. Appx. 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition."). This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Even if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must still meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066 at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of

Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir.2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide on certain issues, such as whether a patient is disabled. 20 C.F.R. § 416.927(e). The opinions of treating physicians on such issues are generally not entitled to special significance. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); 20 C.F.R. § 416.927(e)(3). Nevertheless, "[w]hile controlling weight will not be provided to a treating physician's opinion on an issue reserved to the Commissioner, the ALJ must 'explain the consideration given to the treating source's opinion(s).'" *Bass*, 499 F.3d at 511 (quoting SSR 96-5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34474 (Soc. Sec. Admin. July 2, 1996)).

B. Dr. Murray

At the time when Dr. Murray completed the August 15, 2000 evaluation sheet for the Bureau of Disability Determination, she was a treating physician because she had developed an

ongoing relationship with Plaintiff dating back to February 1998.[3] (R. at 251–68.) As noted above, in the evaluation Dr. Murray concluded that Plaintiff was permanently unable to work based on multiple diagnoses including Lupus, chronic fatigue, fibromyalgia, and depression. (R. at 738.) Furthermore, Dr. Murray indicated in the evaluation that Plaintiff had "chronic, widespread, severe pain" and, in addition to pain, was also limited because of a chronically unstable knee, Achilles tendon rupture, and calf atrophy. (R. at 730–31.) Dr. Murray noted that Plaintiff's pain occurs during both at rest and during activity. (R. at 734.) Dr. Murray also indicated that Plaintiff required a cane and was prone to falling. (R. at 732.)

In this case, the ALJ failed to articulate his reasons for rejecting the opinions of Dr. Murray, a treating source, and, therefore, failed to meet the reason-giving requirement. In discussing Plaintiff's impairments, the ALJ acknowledged that Dr. Murray began treating Plaintiff in February 1998, and adopted her diagnoses of Lupus, chronic pain disorder, and deep vein thrombosis to support his findings of severe impairments. (R. at 23–24.) After discussing Plaintiff's severe impairments, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work, that Plaintiff's statements regarding his symptoms were not credible, and that Plaintiff was not disabled prior to March 9, 2008. (R. at 28–32.) Despite these conclusions, the ALJ failed to mention Dr. Murray's opinion that Plaintiff was not capable of future employment, her statements regarding the extent and severity of Plaintiff's pain, or any portion of the August 15, 2000 questionnaire. (*See* R. at 23–33.)

Defendant contends that the ALJ was not required to articulate reasons for rejecting Dr. Murray's opinions. (Def.'s Mem. in Opp'n 8–9.) First, Defendant asserts that Dr. Murray's

_____

[3] Defendant does not contest Dr. Murray's status as a treating physician. *See* (Def.'s Mem. in Opp'n 8–9.)

responses failed to address many of the objective criteria related to Plaintiff's condition that the August 2000 questionnaire required.  (Def.'s Mem. in Opp'n 8 (citing *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 176 (6th Cir. 2009)).  Second, Defendant maintains that Dr. Murray failed to outline specific restrictions to Plaintiff's work ability.  (Def.'s Mem. in Opp'n 8 (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)).

Defendants contentions are unavailing.  The ALJ very well may have justified rejecting Dr. Murray's opinions for the reasons Defendant sets forth.  In this case, however, he did not support his rejection of Plaintiff's treating source with any reasoning whatsoever.  The reason-giving requirement obligates the ALJ to articulate such reasoning.  20 C.F.R. § 416.927(d)(2) (emphasis added) ("We will *always* give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.")  Tellingly, Defendant relies on *Price*, a case in which "the ALJ reasonably weighed [the treating physician's] opinions in light of the factors set forth in the regulations."  *Price*, 342 Fed. Appx. at 176.  *Price*, however, is not dispositive of the issue in this case.  Here, the ALJ failed to give any description of the weight he gave Dr. Murray's opinions.  Nor did the ALJ indicate that he had even considered the August 2000 questionnaire.  As Defendant correctly submits, portions of Dr Murray's opinions did touch on issues reserved to the Commissioner, such as the ultimate disability determination.  Those portions, therefore, were not entitled to special weight.  *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531 at *4 (6th Cir. 2010).  Nevertheless, the ALJ was not entitled to completely ignore such opinions, but instead was obligated to "'explain the consideration given to the treating source's opinion.'"  *Id.* at *4 (citing Soc. Sec. Rul. 96-5p, 61 Fed. Reg. at 34474); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (holding that an ALJ satisfied the good reason requirement by explaining that a  treating physician's credibility

14

opinions were not helpful because a claimant's credibility was an issue reserved to the Commissioner).

Defendant also maintains that the ALJ did not have to give good reasons for rejecting Dr. Murray's opinions because her reports were outdated and not connected to a relevant time period.  (Def.'s Mem. in Opp'n 8–9.)  As his opinion reflects, the ALJ considered Plaintiff's disability status only after November 22, 2004, as he concluded that previous determinations were final and binding.  (R. at 19.)  Nevertheless, in making his determination regarding Plaintiff's severe impairments, the ALJ relied heavily on Plaintiff's medical history before November 22, 2004, including medical records from 1998.  Accordingly, it is clear that the ALJ *did* consider this period relevant to his disability determination.[4]  *Cf. Pasco v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 828, 839 (6th Cir. 2005) ("[T]he Government notes that the 1995 and 1996 exams by [the treating physician] took place well before [the claimant's] alleged onset date of November 1999 . . . .  However, the ALJ considered evidence from . . . exams that took place prior to 1999, so it does not appear that the ALJ necessarily found the earlier exam irrelevant.").  Once again, the date of Dr. Murray's questionnaire may have been an acceptable reason for the ALJ to reject her opinions.  The ALJ was procedurally required to articulate such reasoning, and failed to do so.

The ALJ failed to provide good reasons or describe the weight he gave to Dr. Murray's

---

[4]  Other factors also support the conclusion that Dr. Murray's August 2000 questionnaire was relevant to the ALJ's decision.  For example, a substantial portion of the record in this case consists of medical records before the November 22, 2004 period.  Additionally, Dr. Murray's opinion indicated not only that Plaintiff was unable to work as of August 15, 2000, but also that Plaintiff would be incapable of performing work in the future.  (R. at 738.)  Finally, although the review period for earlier applications had closed, there had been no ALJ review since September 18, 1998.  The undersigned cannot assume that ALJ McNichols was relying on previous ALJ decisions to reject Dr. Murray's August 2000 opinions.  (*See* R. at 19.)

opinions.  Accordingly, the ALJ failed to meet the standards of the reason-giving requirement.[5]

C. Harmless Error

Defendant contends that even if the ALJ erred in failing to address Dr. Murray's

opinions, such error was harmless.  (Def.'s Mem. in Opp'n 8 n.3.)  In *Wilson*, the United States

Court of Appeals for the Sixth Circuit discussed the appropriate approach for assessing harmless

error when an ALJ has failed to provide good reasons for rejecting a treating source opinion.

378 F.3d at 546.  Specifically, *Wilson* held that "[a] court cannot excuse the denial of a

mandatory procedural protection simply because, as the Commissioner urges, there is sufficient

evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different

outcome on remand is unlikely."  *Id.* at 546; *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 655 (6th Cir. 2009) (indicating that, under *Wilson*, failure of an ALJ to give "good reasons"

for rejecting a treating source opinion "would almost always require reversal and remand to

Commissioner").  Since *Wilson*, the Sixth Circuit has reiterated:

> "[w]e do not hesitate to remand when the Commissioner has not provided 'good
> reasons' for the weight given to a treating physician's opinion and we will
> continue remanding when we encounter opinions from ALJ's that do not
> comprehensively set forth reasons for the weight assigned to a treating
> physician's opinion."

*Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545 (internal

quotations omitted)).

---

[5] Plaintiff contends that Dr. Franklin's opinion was also entitled to the protection of the good-reason requirement.  (Pl.'s Statement of Errors 12.)  The undersigned concludes that whether Dr. Franklin' relationship with Plaintiff rises to the level of a treating-physician is uncertain based on the record evidence.  (*See* R. at 740–48.)  Nevertheless, because the undersigned recommends remand, as discussed below, it is unnecessary to decide whether Dr. Franklin qualifies as a treating physician.  On remand the ALJ may decide the appropriate weight and consideration to give Dr. Franklin's opinions.

Although it did not actually decide the issue, the *Wilson* Court opened the door for considerations of whether a *de minimis* violation of the good-reason requirement could ever be harmless error.  378 F.3d at 547–48.  Specifically, *Wilson* considered three possible scenarios that could lead the Court to a finding of harmless error.  *Id.* at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ."  *Id.*  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  *Id.*  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of [the reason-giving requirement] . . . though she has not complied with the terms of the regulation."  *Id.*

After *Wilson*, the United States Court of Appeals for the Sixth Circuit has continued to conduct harmless error analysis in cases in which ALJs have failed to comply with the reason-giving requirement.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).  Nevertheless, the Sixth Circuit has emphasized that "the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision."  *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 at 547.

In this case, the ALJ's failure to satisfy the reason-giving requirement was not harmless error.  First, the undersigned is unwilling to conclude that Dr. Murray's opinions were "so

17

patently deficient  that the Commissioner *could not possibly* credit [them] . . ." *Wilson*, 378 F.3d at 547 (emphasis added).  At the time she filled out the August 2000 questionnaire, Dr. Murray had been treating Plaintiff for over two years and in addition to physical examinations had ordered a number of X-rays and CT scans.  (R. at 730, 734.)  Furthermore, the ALJ relied on many of Dr. Murray's earlier records in determining Plaintiff's severe impairments.  (R. at 23–24.)

Additionally, the ALJ's decision is at least partially inconsistent with Dr. Murray's opinions, making it relevant that the ALJ did not describe the weight given to the position of Plaintiff's treating physician.  *See Wilson* 378 F.3d at 547.  The ALJ acknowledged that Plaintiff had severe impairments based on a portion of Dr. Murray's medical reports.  (R. at 23–24.) Nevertheless, the ALJ's residual functional capacity assessment, his finding that Plaintiff's statements were not entirely credible, and his ultimate conclusion that Plaintiff was not disabled before March 9, 2008 are all in tension with Dr. Murray's opinions that Plaintiff's pain and impairments made him incapable of performing work.  Therefore, the ALJ's failure to give reasons for rejecting Dr. Murray's opinions cannot be said to be harmless on consistency grounds.

Finally, the ALJ's opinion does not meet the goal of the reason-giving requirement.  The United States Court of Appeals for the Sixth Circuit has indicated that an ALJ can satisfy the goal of the reason-giving requirement by indirectly attacking the treating physician opinion through either an analysis of the treating physician's other opinions or through a general discussion of a claimant's impairments.  *Nelson*, 195 Fed. Appx. at 470 (citing *Hall v. Comm'r of Soc. Sec*., 148 Fed. Appx. 456, 464 (6th Cir. 2005).  In all events, however, the ALJ must still "implicitly provide sufficient reasons for the rejection."  *Hall*, 195 Fed. Appx. at 464.  It is not

18

enough that the opinion indicates that the ALJ did ultimately reject the treating physician opinion.  *Id.*

Here, it is unclear whether the ALJ was attempting to indirectly attack Dr. Murray's opinions.  First, the ALJ's brief description of Dr. Murray's treatment of Plaintiff did not indicate any view that Dr. Murray's opinions were unreliable in any manner.  (*See* R. at 23–24.) Second, although the ALJ's opinion does provide a general discussion of Plaintiff's limitations, there is no indication that the ALJ is implicitly rejecting Dr. Murray's opinion.  Specifically, the ALJ relied on the RFC of Drs. Pangalangan and Holbrook, added limitations based on Plaintiff's severe impairments, and then concluded "[t]he medical evidence as a whole does not indicate limitations greater than those already accommodated."  (R. at 28.)  This analysis contains no indication of why the ALJ rejected Dr. Murray's opinions regarding plaintiff's pain limitations. The ALJ thoroughly described why he rejected the disability opinion of Ms. Rutan, a nurse practitioner.  (R. at 28–29.)  The fact that the ALJ's decision gave such attention to an opinion that was not from a treating source provides a strong implication that the ALJ overlooked Dr. Murray's treating source opinion.  Because it is unclear why the ALJ rejected Dr. Murray's opinions, the undersigned is unwilling to conclude that his decision is capable of meaningful review without this requisite analysis.  *See Blakley*, 581 F.3d at 409.

Defendant contends that the ALJ's error was harmless because the ALJ relied on the evidence of Drs. Pangalangan and Holbrook report in assessing the Plaintiff's residual functional capacity.  (Def.'s Mem. In Opp'n 8 (citing *Heston v. Comm'r of Soc. Sec.*, 977 F.3d 528, 535 (6th Cir. 2001).)  In assessing harmless error under the reason-giving requirement, however, the court cannot "excuse the denial of [] a mandatory procedural protection simply because . . . there [was] sufficient evidence in the record for the ALJ to discount the treating source's opinion."

19

*Rabbers*, 582 F.3d at 656 (quoting *Wilson*, 378 F.3d at 547).  Furthermore, Defendant relies on

*Heston* for the proposition that it is harmless error when an ALJ's fails to mention a treating

source's opinion made before the claimant's alleged onset date.  (Def.'s Mem. In Opp'n 8.)  This

characterization of *Heston* is unavailing.  As the *Wilson* Court recognized, remand was not

necessary in *Heston* because "the ALJ attributed to the claimant limitations consistent with those

identified by the treating physician."  378 F.3d at 547.  As discussed above, Dr. Murray's

opinions are not entirely consistent with the limitations the ALJ assigned in this case.

Accordingly, this is not the "rare case" where an ALJ's failure to meet the reason-giving

requirement constitutes harmless error.  *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 749 (6th

Cir. 2007) (citing *Nelson*, 195 Fed. Appx. at 472).

D.  Remand is Warranted

In his Statement of Errors Plaintiff contends that, at a minimum, remand is required.

(Pl.'s Statement of Errors 16.)  Under sentence four of 42 U.S.C. § 405(g) the Court has the

power to affirm, modify, or reverse the Commissioner's decision "with or without remanding the

cause for rehearing."  The United States Court of Appeals for the Sixth Circuit has stated that

"'[i]f a court determines that substantial evidence does not support the [Commissioner's]

decision, the court can reverse the decision and immediately award benefits only if all essential

factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to

benefits.'"  *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 790 (6th Cir. 2009) (quoting

*Faucher v. Sec'y of Health & Human Servs*., 17 F.3d 171, 176 (6th Cir.1994)).  If this is not the

case, the Court "should remand to the Commissioner for further consideration."  *Id.*

Although not reaching Plaintiff's second contention or error,[6] the undersigned has performed a review of the entire record. The undersigned is unwilling to conclude from the current state of the record that all factual issues are resolved and that Plaintiff is entitled to benefits. Rather, because Plaintiff's contentions of error are largely procedural in nature, and do not require the Court to decide whether substantial evidence supports the ALJ's decision, the undersigned finds remand to be the best course of action.

## VII. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Court **REMAND** the decision of the Commissioner of Social Security for further proceedings consistent with this Report and Recommendation.

## VIII. Notice

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

---

[6] Plaintiff's second contention of errors states that the ALJ failed to consider the examinations of Drs. Hoy, Frank, and Gilliam in evaluating Plaintiff's residual functional capcity. (Pl.'s Statement of Errors 14–16.) Although these opinions are not mentioned in the ALJ's evaluation of Plaintiff's residual functional capacity, the reason-giving requirement only applies to treating sources. *Ealy*, 594 F.3d at 514. Nevertheless, regulations still require the ALJ to consider every medical opinion he or she receives. 20 C.F.R. § 416.927. Because the ALJ failed to satisfy the reason-giving requirement, necessitating remand, the undersigned will not decide whether the ALJ erred with regards to Drs. Hoy, Frank, and Gilliam. Nevertheless, upon remand the Commissioner may wish to consider how these physicians' opinions influence the residual functional capacity determination.

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


August 10, 2010                                   /s/ *Elizabeth A. Preston Deavers*
                                          Elizabeth A. Preston Deavers
                                          United States Magistrate Judge